**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 12-cv-01496-REB-MJW

CRAZY WILLY'S, INC,
JACK'S HALLOWEEN, LLC, and
BRIAN VEATCH,

     Plaintiffs,
v.

HALLOWEEN EXPRESS, LLC,
MORRIS COSTUMES, INC., and
SCOTT MORRIS,

     Defendants.

---

**ORDER GRANTING MOTION TO DISMISS AND TO COMPEL ARBITRATION**

**Blackburn, J.**

The matter before me is the **Defendants' Motion To Dismiss for Improper Venue or Stay In Favor of Arbitration** [#7][1] filed June 15, 2012. The plaintiffs filed a response [#10], and the defendants filed a reply [#11]. I grant the motion.

### I. JURISDICTION

I have jurisdiction over this matter under 28 U.S.C. § 1332 (diversity).

### II. STANDARD OF REVIEW

Under FED. R. CIV. P. 12(b)(3), a party may seek dismissal of a case because the case was not filed in the proper venue. When a forum selection clause is at issue, the venue determination hinges primarily on a determination of the validity and

---

[1] "[#7]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

enforceability of the forum selection clause. ***M/S Bremen v. Zapata Off-Shore Co.***, 407 U.S. 1, 10 (1972).

The decision whether to enforce an arbitration agreement involves a two-step inquiry. First, I must determine whether the parties agreed to arbitrate the dispute. ***Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth***, 473 U.S. 614, 626, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985); ***Williams v. Imhoff***, 203 F.3d 758, 764 (10th Cir. 2000). I must consider then whether any statute or policy renders the claims non-arbitrable. ***Mitsubishi Motors Corp.***, 105 S.Ct. at 3355; ***Williams***, 203 F.3d at 764.

### III.  FACTUAL ALLEGATIONS

Plaintiffs Crazy Willy's, Inc. and Jack's Halloween, L.L.C. both are franchisees of defendant Halloween Express, L.L.C. They both own rights to Halloween Express franchises in several Colorado counties. Halloween Express has a franchise agreement with Jack's Halloween and a separate franchise agreement with Crazy Willy's. *Brief in support of motion to dismiss* [#8], Exhibits A & B.[2] Plaintiff Brian Veatch is the owner of Jack's Halloween.

On June 16, 2011, Jack's Halloween agreed to buy rights to three Colorado stores from Crazy Willy's. As the franchisor for both Jack's Halloween and Crazy Willy's, Halloween Express approved the sale. Jack's Halloween also purchased inventory from Crazy Willy's. Crazy Willy's retained a security interest in the inventory

---

[2] In their complaint, the plaintiffs refer to the franchise agreements and to a pledge of collateral by Jack's Halloween to Morris Costumes. With their brief in support of their motion to dismiss [#8], the defendants include copies of the relevant franchise agreements and security agreements between and among the entity parties. The plaintiffs do not contest the authenticity of these documents. If a document is referenced in or attached to the complaint and is central to plaintiff's claims, I may consider an indisputably authentic copy of the document in resolving a motion to dismiss. *See GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384-85 (10th Cir. 1997). Thus, I considered these documents without converting the motion to dismiss to a motion for summary judgment.

2

purchased from Crazy Willy's by Jack's Halloween.

Defendant Morris Costumes, Inc. sells Halloween costumes to various retailers, including both Crazy Willy's and Jack's Halloween. Defendant Scott Morris is the majority owner of Morris Costumes and the majority vote holder of Halloween Express. Morris Costumes says it has a written security agreement related to the purchase of costume inventory, with Crazy Willy's, Inc. and a separate security agreement with Brian Veatch, owner of Jack's Halloween. *Brief in support of motion to dismiss* [#8], Exhibits C & D. The copies of these agreements submitted by the defendants do not show that the agreements ever were executed by Morris Costumes. However, the plaintiffs allege that both Crazy Willy's and Jack's Halloween purchased inventory from Morris Costumes on credit. ¶ 13.[3] In addition, the plaintiffs allege that Jack's Halloween purchased inventory from Morris Costumes in August of 2011, and that inventory was pledged as collateral for credit extended by Morris Costumes. These allegations demonstrate Morris Costumes' assent and agreement to the terms of the security agreements.

After the June 2011 transfer of three stores from Crazy Willy's to Jack's Halloween, Scott Morris contacted Jack's Halloween to tell Jack's Halloween that Morris Costumes would not extend full credit to Jack's Halloween for the purchase of costume inventory. Rather, Morris Costumes demanded a substantial down-payment from Jack's Halloween. Ultimately, Jack's Halloween made a down-payment and purchased 305,000 dollars worth of inventory from Morris Costumes. The inventory purchased from Morris Costumes was pledged to Morris Costumes as collateral for the credit

---

[3] I refer to the complaint [#6-1] by paragraph number.

extended to Jack's Halloween by Morris Costumes. The inventory Jack's Halloween purchased from Crazy Willy's was not pledged as collateral for the credit extended by Morris Costumes.

In the 2011 season, Jack's Halloween suffered significant losses on all three stores it had purchased from Crazy Willy's. Jack's Halloween did not pay to Crazy Willy's the full purchase price for the rights to three Colorado stores which Jack's Halloween had purchased from Crazy Willy's. Jack's Halloween owes Crazy Willy's about 200,000 dollars, which was to be satisfied when Jack's Halloween returned to Crazy Willy's the inventory Crazy Willy's had sold to Jack's Halloween.

In November 2011, all of the costume inventory of Jack's Halloween was shipped to Morris Costumes, including the inventory Jack's Halloween had purchased from Crazy Willy's. Scott Morris agreed to pay for the shipping, storage, and separation of this inventory, which had a total value of about 400,000 dollars. The inventory was liquidated by Scott Morris and Morris Costumes. The proceeds of this liquidation were paid to Morris Costumes and Halloween Express to satisfy the amounts owed to those entities by Jack's Halloween. None of the proceeds was paid to Crazy Willy's.

The plaintiffs allege that Scott Morris, Morris Costumes, and Halloween Express took possession of and sold the inventory of Jack's Halloween in which Crazy Willy's held a security interest. According to the plaintiffs, Scott Morris, Morris Costumes, and Halloween Express held no interest of any kind in this inventory.

Plaintiffs Jack's Halloween and Brian Veatch have assigned all of their claims and remedies to plaintiff Crazy Willy's. ¶ 40. For some or all of its claims, Crazy Willy's apparently relies on its rights as an assignee of Jack's Halloween and Brian Veatch. In addition, it is important to note the plaintiffs' contention that Halloween Express and

4

Morris Costumes are liable for the actions of Scott Morris, as described in the complaint. ¶¶ 91 - 95. The plaintiffs assert nine claims related to Halloween Express's performance under the franchise agreements and to the alleged conversion of the costume inventory in which Crazy Willy's held a security interest:

1. Conversion - Crazy Willy's against Morris Costumes and Scott Morris;

2. Tortious interference - all plaintiffs against Morris Costumes and Scott Morris;

3. Negligence - all plaintiffs against Halloween Express and Scott Morris;

4. Breach of fiduciary duty - all plaintiffs against Halloween express;

5. Conspiracy - all plaintiffs against all defendants;

6. Unjust enrichment - Crazy Willy's against all defendants;

7. Respondeat superior - all plaintiffs against Halloween Express and Morris Costumes;

8. Promissory estoppel - all plaintiffs against all defendants; and

9. Breach of implied covenant of good faith - all plaintiffs against all defendants.

## IV. ANALYSIS

The defendants contend that the franchise agreements contain a venue provision which mandates that any claims against Halloween Express be arbitrated in Summit County, Ohio, and that any related court proceedings take place in Summit County, Ohio. According to the defendants, the franchise agreements and security agreements contain arbitration provisions that mandate that the plaintiffs' claims be resolved in arbitration.

### A. Halloween Express Franchise Agreements

Crazy Willy's and Jack's Halloween each have separate franchise agreements with Halloween Express. Both agreements include the same venue and arbitration

5

provision:

> 17.2 Any controversy or claim between Franchisee and Franchisor will be resolved by arbitration in Akron, Summit County, Ohio pursuant to applicable Ohio law, enforceable by the Summit County, Ohio courts, and Franchisee hereby submits to that exclusive jurisdiction and venue.

### B. Morris Costumes Security Agreements

Crazy Willy's and Brian Veatch, owner of Jack's Halloween, each have separate security agreements with Morris Costumes. Both agreements include the same arbitration provision:

> 10. BINDING ARBITRATION. Any and all controversies or claims of any nature whatsoever arising out of or relating to this Agreement shall be settled by binding arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules.

### C. Application of Halloween Express Venue Provision

The Supreme Court has held that the standards applicable to a motion to transfer venue under 28 U.S.C. § 1404(a) are applicable to a motion to enforce a forum selection clause in a diversity case. **Stewart Org. Inc. v. Ricoh Corp.**, 487 U.S. 22, 29-30 (1988). The presence of an enforceable forum selection clause is an important, but not dispositive, factor in this analysis. *Id*. at 31. Forum selection clauses are *prima facie* valid, and a party contesting that presumption bears a heavy burden of proof. **M/S Bremen v. Zapata Off-Shore Co.**, 407 U.S. 1, 10 (1972); **Riley v. Kingsley Underwriting Agencies, Ltd.**, 969 F.2d 953, 957 (10th Cir.), **cert. denied**, 506 U.S. 1021 (1992). A forum selection clause may be found to be unenforceable if 1) enforcement would be unreasonable and unjust; 2) the clause is invalid because of fraud or overreaching; or 3) enforcement would contravene a strong public policy of the forum in which suit is brought. **M/S Bremen v. Zapata Off-Shore Co.**, 407 U.S. 1, 15 (1972); **Excell, Inc. v. Sterling Boiler & Mechanical, Inc.**, 106 F.3d 318, 320 - 321

(10th Cir. 1997).

The venue provision of the franchise agreements covers "(a)ny controversy or claim between Franchisee and Franchisor." Here, the claims asserted against Halloween Express by Crazy Willy's and Jack's Halloween are claims between franchisees and the franchisor. All of the claims are tied closely to the franchise agreements and business conducted under those agreements. I reject the arguments of the plaintiffs that somehow the broad terms of the venue provision are not applicable to the claims of Crazy Willy's and Jack's Halloween against Halloween Express. None of the other bases on which a forum selection clause may be found to be invalid is established in the record. Thus, venue for the claims of Crazy Willy's and Jack's Halloween against Halloween Express is proper only in Summit County, Ohio. Those claims are subject to dismissal without prejudice because they were filed in an improper venue.

### D. Application of Arbitration Provisions

The question whether the parties agreed to arbitrate their dispute focuses on two considerations: (1) whether there is a valid agreement to arbitrate; and (2) whether the dispute falls within the scope of that agreement. *See National American Insurance Co. v. SCOR Reinsurance Co.*, 362 F.3d 1288, 1290 (10th Cir. 2004); *Via Fone, Inc. v. Western Wireless Corp.*, 106 F.Supp.2d 1147, 1150 (D. Kan. 2000). "The existence of an agreement to arbitrate is a threshold matter which must be established before the FAA can be invoked." *Avedon Engineering, Inc. v. Seatex*, 126 F.3d 1279, 1287 (10th Cir. 1997). State law principles of contract formation govern whether a valid arbitration agreement exists. *Hardin v. First Cash Financial Services, Inc.*, 465 F.3d 470, 475 (10th Cir. 2006). There is no presumption in favor of arbitration with respect to this

prong of the test. *See Axis Venture Group, Inc. v. 1111 Tower, LLC*, 2010 WL 1278306 at *2 (D. Colo. March 30, 2010). Defendant bears the initial burden to present evidence sufficient to suggest that an enforceable agreement to arbitrate exists. *Id.* at *3. If it does so, the burden then shifts to plaintiff to demonstrate a genuine issue of material fact as to the making of the agreement. *Id.*

Because the venue provision of the franchise agreements limits venue for any arbitration to Summit County, Ohio, I conclude that venue for a determination of what claims are covered by the arbitration clause is proper only in Summit County, Ohio. Therefore, I decline to make a binding determination of which of the claims asserted in this case are covered by the arbitration clause of the franchise agreements. My position on this issue applies only to the claims of Crazy Willy's and Jack's Halloween against Halloween Express.

The arbitration provision of the Morris Costumes security agreements covers "(a)ny and all controversies or claims of any nature whatsoever arising out of or relating to this Agreement." The claim that Morris Costumes converted costume inventory in which Crazy Willy's held a security interest is a claim related to the security agreement between Brian Veatch, owner of Jack's Halloween, and Morris Costumes. The claim is based on the contention that Morris Costumes took possession of inventory in which it held a valid security interest and took possession of additional inventory not covered by the security agreement. Ultimately, resolution of this claim requires a determination of the scope and operation of the security agreement. In a similar way, each of the plaintiffs' other claims against Morris Costumes is related to the security agreement between Brian Veatch and Morris Costumes. By accepting from Mr. Veatch an assignment of his claims, Crazy Willy's is also subject to the terms of the arbitration

provision to the extent the assigned claims fall within that provision.

Facially, the claims asserted against Scott Morris do not fall within the scope of the arbitration provision of the Morris Costumes security agreement because Scott Morris is not a party to those agreements. Facially, Scott Morris did not agree to arbitration, although he does not oppose arbitration in this case. However, the plaintiffs allege that Morris Costumes is liable for the actions of Scott Morris under the doctrine of *respondeat superior*. ¶¶ 91 - 95. Thus, in reality, the claims asserted against Scott Morris also are asserted against Morris Costumes. The claims against Scott Morris are related to the Morris Costumes security agreement, and those claims fall within the scope of the arbitration provision. **See ARW Exploration Corp. v. Aguirre**, 45 F.3d 1455, 1460-61 (10th Cir. 1995); **Roe v. Gray**, 165 F. Supp. 2d 1164, 1174 (D. Colo. 2001).

## V. CONCLUSION

The claims asserted by plaintiffs Crazy Willy's, Inc. and Jack's Halloween, L.L.C against defendant Halloween Express, L.L.C. all are subject to the terms of the venue provision in the franchise agreements. Under FED. R. CIV. P. 12(b)(3), these claims will be dismissed without prejudice for improper venue.

The claims asserted by each of the plaintiffs against Morris Costumes, Inc. and Scott Morris are subject to the arbitration provision in the Morris Costumes security agreement. Thus, the plaintiffs and defendants Morris Costumes, Inc. and Scott Morris will be ordered to proceed to arbitration on those claims.

**THEREFORE, IT IS ORDERED** as follows:

1. That the **Defendants' Motion To Dismiss for Improper Venue or Stay In Favor of Arbitration** [#7] filed June 15, 2012, is **GRANTED** on the terms stated below;

    2. That under FED. R. CIV. P. 12(b)(3), the claims asserted by plaintiffs Crazy Willy's, Inc. and Jack's Halloween, L.L.C against defendant Halloween Express, L.L.C. are **DISMISSED** without prejudice because they were filed in an improper venue;

    3. That plaintiffs Crazy Willy's, Inc., Jack's Halloween, L.L.C., and Brian Veatch, and defendants Morris Costumes, Inc. and Scott Morris are **ORDERED** to proceed to arbitration of plaintiffs' claims against defendants Morris Costumes, Inc. and Scott Morris;

    4. That this case is **STAYED** pending the outcome of the arbitration of the claims described in paragraph three (3), above;

    5. That the Trial Preparation Conference set June 28, 2013, and the trial set to commence July 15, 2013, are **VACATED**; and

    6. That under D.C.COLO.LCivR 41.2, the clerk **SHALL CLOSE** this case administratively, subject to reopening for good cause.

    Dated March 18, 2013, at Denver, Colorado.

                                                    **BY THE COURT:**

                                                    */s/ Robert E. Blackburn*
                                                    Robert E. Blackburn
                                                    United States District Judge